George H. POWELL, Plaintiff–
Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 90–6034.

United States Court of Appeals,
Eleventh Circuit.

Oct. 22, 1991.

Elizabeth St. Clair, Nicholas Poser, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, New York City, for plaintiff-appellant.

Gary R. Allen, Chief, Brian C. Griffin, Janet Kay Jones, Robert S. Pomerance, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

DUBINA, Circuit Judge:

The appellant, George H. Powell ("Powell"), appeals the district court's order of dismissal of Powell's complaint for failure to state a claim upon which relief could be granted. The record demonstrates that Powell did state a claim upon which, under certain factual scenarios, relief could be granted and, accordingly, we vacate the district court's order and remand this case for further proceedings.

## I. BACKGROUND

### A. *Facts*

Powell is a member of the Church of Scientology of Florida, ("the Church"). In exchange for participation in religious services, Powell made payments to the Church in the amounts of $5,781.00 in 1984 and $3,800.00 in 1985.[1] He then claimed these payments as charitable deductions on his federal income tax returns under 26 U.S.C.A. § 170.[2] On audit, the Internal Revenue Service ("IRS") disallowed the deductions, resulting in income tax deficiencies for 1984 and 1985, which Powell paid in full. Thereafter, Powell filed administrative claims for refunds of $1,386.00 for 1984 and $1,422.00 for 1985. The IRS failed to act on these claims.

### B. *Procedural History*

Powell filed a complaint against the IRS alleging that the IRS is administratively inconsistent in its application of § 170 of the Internal Revenue Code ("IRC"). The IRS moved to dismiss the action and to stay discovery pending the ruling of the district court on the motion to dismiss. The district court granted the stay and eventually dismissed Powell's complaint for failure to state a claim upon which relief could be granted. Powell then perfected this appeal.

## II. STANDARD OF REVIEW

When reviewing the dismissal of a complaint under Fed.R.Civ.P. 12(b)(6), we must accept Powell's allegations as true. A district court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not affirm unless it appears beyond doubt that the plaintiff can prove no set of facts

---

1. For a detailed description of the Church's religious services, *see Hernandez v. Commissioner,* 490 U.S. 680, 684–86, 109 S.Ct. 2136, 2141–42, 104 L.Ed.2d 766 (1989).

2. Section 170 provides in pertinent part:
   (a) Allowance of deduction.—
   (1) General Rule.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary.

   (c) Charitable contribution defined.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—
   (2) A corporation, trust, or community chest, fund, or foundation—
   (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition....
   (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual....

in support of the claims in the complaint that would entitle him or her to relief.").

## III. DISCUSSION

### A. *Allegations in Powell's Complaint*

Powell alleges in his complaint that the IRS is administratively inconsistent in its application of § 170 of the IRC. Powell claims that he is entitled to a refund because it has been and still is the administrative practice of the IRS to allow tax deductions to members of other religious denominations who make contributions to their churches as a *quid pro quo* for participation in or to obtain the performance of religious services or benefits. Powell claims disallowance of these deductions for members of his religion constitutes unconstitutional discrimination.

Specifically, Powell alleges that it has been and still is the consistent administrative practice of the IRS to allow charitable contribution deductions to: (1) members of the Jewish religion for payments for High Holy Day tickets which allow members to participate in religious services; (2) members of the Mormon religion for mandatory tithes which are required in order to participate in the religious services of the Mormon faith; (3) members of the Roman Catholic religion for stipends paid in exchange for the saying of special masses;[3] and (4) members of certain Protestant religions who pay rental fees for the privilege of sitting in a specific pew at religious services.

Powell presented certain facts to the district court supporting his allegation that the IRS continues to adhere to a general policy of allowing deductions for payments made in a *quid pro quo* exchange for religious services. Powell offered a question and answer guidance package, in which an IRS Assistant Commissioner explained:

In contrast to tuition payments, religious observances generally are not regarded as yielding private benefits when attending the observances. The primary beneficiaries are viewed as being the general public and members of the faith. Thus, payments for saying masses, pew rents, tithes, and other payments involving fixed donations for similar religious services, are fully deductible contributions.[4]

Further, Powell apprised that in 1919 the IRS gave its official approval to the deduction of fixed payments for certain religious services when it stated:

> [T]he distinction of pew rents, assessments, church dues, and the like from basket collections is hardly warranted by the act. The act reads 'contributions' and 'gifts.' It is felt that all these come within the two terms.
>
> In substance it is believed that these are simply methods of contributing although in form they may vary.

A.R.M. 2, 1 C.B. 150 (1919). In a 1970 ruling, the IRS reaffirmed its position stating: "pew rents, building fund assessments, and periodic dues paid to a church ... are all methods of making contributions to the church, and such payments are deductible as charitable contributions within the limitations set out in § 170 of the Code." Rev.Rul. 70–47, 1970–1 C.B. 49 (superseding A.R.M. 2, 1 C.B. 150 (1919)).

### B. *Analysis*

The district court, in dismissing Powell's complaint, maintained that the United States Supreme Court previously decided the issue presented in the instant case in *Hernandez v. Commissioner,* 490 U.S. 680, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). In *Hernandez,* the petitioner argued that his payments to the Church were charitable contributions and, therefore, deductible under § 170. The Supreme Court, however, held that the payments were not deductible because they were part of a *quid pro quo*

---

**3.** According to some Catholic theologians, the nature of the pact between a priest and a donor who pays a mass stipend is "a bilateral contract known as *do ut facias.* One person agrees to give while the other person agrees to do something in return." 13 New Catholic Encyclopedia, Mass Stipend, p. 715 (1967).

**4.** IRS Official Explains New Examination–Education Program on Charitable Contributions to Tax–Exempt Organizations, BNA Daily Report for Executives, Special Report No. 186, J–1, J–3 (Sept. 26, 1988).

exchange for a tangible benefit, rather than a deductible "gift."

■ In the present litigation, Powell does not contest the Supreme Court's holding in *Hernandez*, that the payments were a *quid pro quo* exchange; rather, Powell argues that he is entitled to a refund because it is the administrative practice of the IRS to allow tax deductions to members of other religions who make contributions to their churches as a *quid pro quo* for participation in or to obtain the performance of religious services or benefits. This disparate treatment, Powell alleges, is not permitted by statute and is unconstitutional discrimination.

Since this case was dismissed on a 12(b)(6) motion, we must assume that individuals in other religions are permitted deductions for *quid pro quo* payments. Powell's allegations must be accepted as true, *Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232, and in his complaint, Powell alleges situations where the members of several religions are allowed deductions for their donations for religious services. Therefore, Powell has met his burden of proof under Fed.R.Civ.P. 12(b)(6).

The only question remaining is whether the inconsistent administration of *quid pro quo* payments is a claim upon which Powell can be granted relief. The Supreme Court in *Hernandez* was presented with this same issue. The district court, however, was incorrect in stating that *Hernandez* controls this case. The Supreme Court rejected *Hernandez's* administrative inconsistency argument, not because it wasn't viable, but because there wasn't a proper factual record to establish the IRS's discordant treatment of religious contributions. *Hernandez*, 490 U.S. at 703, 109 S.Ct. at 2151. Hence, if anything, *Hernandez* alerts us to the fact that there is a claim for administrative inconsistency. That claim has been alluded to before by the Supreme Court. Justice Frankfurter pronounced, "[I]t can be an independent ground of decision that the Commissioner

has been inconsistent...." *United States v. Kaiser*, 363 U.S. 299, 308, 80 S.Ct. 1204, 1219, 4 L.Ed.2d 1233 (1960) (concurring opinion).

The Eleventh Circuit has also acknowledged that there is a claim for administrative inconsistency. *Sharron Motor Lines, Inc. v. United States*, 633 F.2d 1115, 1116 (5th Cir.1981)[5] ("As a federal agency, the ICC must act in an evenhanded manner in performing its regulatory duties."); *N.L.R.B. v. International Union of Operating Eng., Local 925*, 460 F.2d 589, 604 (5th Cir.1972) ("[T]he Board may not depart *sub silentio*, from its usual rules of decision to reach a different, unexplained result in a single case.").

■ Administrative inconsistency becomes more odious when it entails an inconsistent action based upon religion. The principle of denominational neutrality has been restated on many occasions. In *Zorach v. Clauson*, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952), the Supreme Court expounded, "The government must be neutral when it comes to competition between sects." *Id.* at 314, 72 S.Ct. at 684. In *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) the Court declared, "The First Amendment mandates governmental neutrality between religion and religion.... The State may not adopt programs or practices ... which 'aid or oppose' any religion.... This prohibition is absolute." *Id.* at 104, 106, 89 S.Ct. at 270, 271 (citations omitted). And the Court in *Engal v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962), cogently articulated that:

When the power, prestige and financial support of government is placed behind a particular religious belief, the indirect coercive pressure upon religious minorities to conform to the prevailing officially approved religion is plain. But the purposes underlying the Establishment Clause go much further than that. Its first and most immediate purpose rested on the belief that a union of government

**5.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

and religion tends to destroy government and to degrade religion.... [W]henever government ha[s] allied itself with one particular form of religion [or against one form of religion], the inevitable result ha[s] been that it ha[s] incurred the hatred, disrespect and even the contempt of those who [hold] contrary beliefs. *Id.* at 431, 82 S.Ct. at 1267. The Establishment Clause of the First Amendment prohibits denominational preferences, including those created by discriminatory or selective application of a facially neutral statute against a particular denomination. The government may not discriminate among religions by applying or enforcing a statute against or in favor of a particular denomination.

The district court, however, expressed in its opinion that even if Powell's argument for administrative inconsistency is viable, his payments were not divested of their *quid pro quo* characteristics. The district court explained that Powell has no remedy because the remedy for inconsistent administration is not to make a donation deductible for the sake of consistency, when technically all the donations should be nondeductible. In defense of this position the district court cited *Mid–Continent Supply Co. v. Commissioner,* 571 F.2d 1371 (5th Cir.1978). The court in *Mid–Continent* pronounced, "[I]t is well established that a taxpayer has no right to insist upon the same erroneous treatment afforded a similarly situated taxpayer in the past." *Id.* at 1376. Nevertheless, Powell is not attempting to make something a deduction that is not a deduction. His claim is that the IRS allows some *quid pro quo* payments for religious services to be tax deductible while disallowing them for members of his church. Moreover, since the IRS has not admitted that the deductions for *quid pro quo* payments given to the members of other religions are erroneous, the holding of *Mid–Continent* has no impact on this case.

## IV. CONCLUSION

If we take all of Powell's allegations as true, which we must do on review of a 12(b)(6) dismissal, he has stated a claim upon which relief can be granted. The IRS is not allowed to treat two similarly situated taxpayers differently. There is no question that Powell's claim for administrative inconsistency is a valid claim upon which relief can be granted, especially since the claim is a result of Powell's religious affiliation. Thus, for the foregoing reasons, we vacate the district court's order of dismissal of Powell's complaint and remand this case to the district court for further proceedings consistent with this opinion.

VACATED and REMANDED.